IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

United States of America

    v.                                Case No. 2:17-cr-48

Camilo Rocha-Ayon

OPINION AND ORDER

    Defendant pleaded guilty to Count 1 of the indictment, which charged him with conspiracy to possess with the intent to distribute 5 kilograms or more of cocaine in violation of 21 U.S.C. §846. He was sentenced to a term of incarceration of 120 months, to be followed by a 5-year term of supervised release. The Bureau of Prisons ("BOP") reports that his projected release date is August 27, 2025. See www.bop.gov/inmateloc/ (last visited April 26, 2021).

    On April 29, 2020, defendant filed a pro se motion for compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A)(i), as amended by the First Step Act of 2018, due to his medical conditions and the presence of COVID-19 at his institution. Doc. 40. Defendant also asked to be placed on home confinement under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), §12003(b)(2), which permits the BOP to lengthen the maximum amount of time for which an inmate may be placed on home confinement under 18 U.S.C. §3624(c)(2). See CARES Act, Pub.L. 116-136, Div. B., Title II, §12003(b)(2). In an order filed on May 7, 2020, the court denied defendant's request for home confinement, and also denied defendant's motion for compassionate release without prejudice due to defendant's failure to exhaust his administrative remedies. Doc. 43.

    On February 4, 2021, defendant filed another motion for

compassionate release based on his medical conditions and the threat of COVID-19. Doc. 44. Defendant submitted a request for compassionate release to the warden, which was denied by the warden on November 20, 2020. Doc. 44-1, p. 1. The warden also determined that defendant did not qualify for release on home confinement under the CARES Act. Doc. 44-1, p. 4. Counsel was later appointed to represent the defendant. Counsel filed a supplemental motion for compassionate release on April 5, 2021. Doc. 49. The government filed a response in opposition to the motions on April 23, 2021. The government did not contest that defendant had exhausted his administrative remedies, but argued that defendant has not shown an extraordinary and compelling reason warranting his release, and that any grounds for release are outweighed by the statutory sentencing factors in 18 U.S.C. §3553(a). Doc. 51.

I. Home Confinement Under the CARES Act

To the extent that defendant continues to request home confinement under the CARES Act, his motion is not well taken. Under 18 U.S.C. §3621(b), the BOP has the sole authority to determine the place of a defendant's confinement. Under the CARES Act and §3624(c), the BOP director now has authority to grant home confinement to a larger group of prisoners. See United States v. Read-Forbes, No. 12-20099-01-KHV, 2020 WL 1888856, at *5 (D. Kan. Apr. 16, 2020). However, only the BOP has the authority to decide whether home confinement under the CARES Act is appropriate. See United States v. Daniels, No. 4:08-CR-0464-SLB, 2020 WL 1938973 at *1-2 (N.D. Ala. Apr. 22, 2020). Defendant's motion for release under the CARES Act is denied.

II. Standards for Compassionate Release

The court can reduce a sentence under §3582(c)(1)(A)(i) if the court finds that "extraordinary and compelling reasons warrant such a reduction[.]" §3582(c)(1)(A)(i). District courts have full discretion to define what constitutes an "extraordinary and compelling" reason. See United States v. Jones, 980 F.3d 1109, 1111 (6th Cir. 2020). The court must also consider the factors set forth in §3553(a) to the extent that they are applicable. §3582(c)(1)(A). If, after weighing the §3553(a) factors, the court decides that the motion is well taken, the court may reduce the term of imprisonment and may impose a new term of supervised release with or without conditions. §3582(c)(1)(A). Section 3582(c)(1)(A) does not authorize court to order that the defendant serve the remainder of his sentence on home confinement, but the court can order home confinement as a condition of supervised release. United States v. Spencer, No. 20-3721, 2020 WL 549832 (6th Cir. Sept. 2, 2020). The grant of compassionate release is at the discretion of the court. United States v. Kincaid, 802 F. App'x 187, 188 (6th Cir. 2020).

As the government notes, Section 3582(c)(1)(A) also requires that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]" §3582(c)(1)(A). Defendant's request for release does not satisfy any definition of an "extraordinary reason" set forth in U.S.S.G. §1B1.13 and Application Note 1 to that section. However, the Sixth Circuit has held that the policy statements contained in §1B1.13 do not apply to cases in which an inmate files a motion for compassionate release, and that district courts have full discretion to define what constitutes an "extraordinary and compelling" reason without

3

consulting the policy statement. See Jones, 980 F.3d at 1111. Therefore, the court will not base its decision on the policy statements.

III. Reasons for Compassionate Release

Defendant, who is 52 years old, argues that he is at an increased risk of serious illness from COVID-19 due to his health conditions, in particular, Type II diabetes, hypertension, hyperlipidemia, obesity and sleep apnea (he uses an CPAP machine). Hyperlipidemia and sleep apnea are not on the Centers for Disease Control ("CDC") list of conditions which can increase a person's risk of serious illness when contracting COVID-19. See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited April 26, 2021). According to the CDC, Type II diabetes, pulmonary hypertension and obesity can make serious illness from COVID-19 more likely, and persons with hypertension might be at a higher risk of developing serious symptoms.

Defendant has submitted medical records from the BOP concerning his treatment for Type II diabetes. A record dated September 18, 2019, indicated that defendant was doing well on medications without issue. Doc. 49-1, p. 1 However, defendant was in poor compliance with diet and exercise. Doc. 49-1, p. 3. A medical record dated March 10, 2021, reported that defendant acknowledged being "hit or miss" with his medications. Doc. 49-1, p. 1. He was informed that he was taking the maximum dose of these medications, and that the next step was insulin. Defendant stated that he did not want to start insulin, and asked for additional time to make lifestyle changes. Doc. 49-2, p. 4.

4

Defendant takes medication for essential (primary) hypertension. Doc. 44-2, p. 6. The medical records reflect blood pressure readings of 132/80 on September 18, 2019, Doc. 49-1, p. 2; 143/80 on November 16, 2020, Doc. 49-3, p. 1, and 141/83 on March 10, 2021, Doc. 49-2, p. 2. The record dated November 16, 2020, included the assessment that the blood pressure reading was slightly high and that "we will follow closely." Doc. 49-3, p. 2. The record dated March 10, 2021, indicated that the dosage of defendant's hypertension medication was increased. Doc. 49-2, p. 4. Thus, the BOP is treating and monitoring this condition.

On September 18, 2019, defendant's weight was recorded as being 274 pounds. Doc. 49-1, p. 2. Taking into account defendant's height (approximately 6 feet), this resulted in a body mass index of 37.2, which is within the range of the CDC's guidelines for obesity. According to the Centers for Disease Control ("CDC"), obesity (a body mass index over 30kg/m$^2$) is a condition which poses a risk of severe illness from COVID-19. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited April 26, 2021). However, there is no evidence that defendant suffers from any adverse physical problems specifically linked to his weight. See United States v. Tranter, 471 F. Supp.3d 861, 865 (N.D. Ind. July 8, 2020)(noting that BMI is "a notoriously blunt tool" with clinical limitations, including its inability to differentiate between excess fat, muscle and bone mass, and that defendant had not identified any current medical issues resulting from his obesity). Defendant stated in his motion that he works at the institution. An individualized needs plan dated December 30,

5

2020, stated that defendant is classified as CARE2, stable chronic care, and that he had no medical restrictions and was cleared for regular duty. Doc. 44-1, p. 12.

Defendant also refers to his Hispanic ethnicity as a risk factor. The CDC has noted that some racial minority groups have been disproportionately affected by COVID-19 due to factors such as poverty, discrimination, lack of access to health care, type of employment, and housing. See https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/racial-ethnic-disparities/increased-risk-exposure.html (last visited April 26, 2021). There is no indication that any of these factors would make defendant any more susceptible than non-minority inmates to COVID-19 in a federal institution.

As to the risk posed by COVID-19, defendant is currently incarcerated at Ashland FCI, which houses 828 inmates. See https://www.bop.gov/locations/institutions/ash (last visited April 26, 2021). The BOP reports that at this time, no inmates or staff have tested positive, and that 318 inmates and 70 staff have recovered. See https://www.bop.gov/coronavirus (last visited April 26, 2021). This indicates that the BOP has taken substantial steps towards mitigating the threat of COVID-19 at the institution. At Ashland FCI, 129 staff and 485 inmates have been vaccinated. See https://www.bop.gov/coronavirus (last visited April 26, 2021). The government has presented medical records indicating that the defendant has received two doses of the Pfizer vaccine. Doc. 51-1; Doc. 51-2. Although defendant expresses concern that he may still get the virus, he is substantially protected because approximately 97 percent of the inmate population at Ashland FCI have either had

the virus or received the vaccine.

The information presented does not establish that defendant's medical conditions are severe, and those conditions are being regularly monitored and treated by the BOP. Defendant has received the COVID-19 vaccine. Defendant's health conditions, as well as those conditions considered in light of the threat of COVID-19, do not constitute an extraordinary and compelling reason warranting a reduction in sentence.

IV. §3553(a) Factors

The court must also address the applicable §3553(a) factors. The offense in this case was serious. The presentence investigation report ("PSR") stated that in 2016, DEA agents identified defendant as a suspect in a drug trafficking operation. On February 19, 2017, defendant's vehicle was pulled over for a traffic stop. Officers found 10 kilograms of cocaine and a package containing 995.9 grams of Fentanyl. Search warrants were executed at defendant's residence and another residence frequented by the defendant. Agents found 8 firearms in defendant's residence. A total of $223,873 in cash was seized. The offense of conviction carried a mandatory minimum 10-year sentence. The guideline range was 120-135 months.

As to the history and characteristics of the defendant, the PSR reported that defendant was born in California and raised on a ranch. He graduated from high school and has some college credits. He has a history of substance abuse, having used methamphetamine and cocaine in the past. Defendant reported that he worked in construction from 2014-1015, was employed from 2002-2012 cleaning geothermal reactors, and had sporadic employment before then.

7

Defendant indicates that if he is released, he plans to reside with his wife in Columbus, Ohio. Defendant claimed in his motion that employment is available for him at X.P.O. Logistics, a shipping warehouse, and that he would be covered by his wife's medical insurance.

At the time of sentencing, defendant was in Criminal History Category I. He had a prior misdemeanor conviction in 2003, for possession of a controlled substance (methamphetamine), a 2003 misdemeanor conviction for aiding and abetting an exhibition of speed, and a 2009 conviction for driving while intoxicated. Although these are all misdemeanor convictions, defendant did not have a clean slate prior to the instant offense.

An individualized needs plan dated December 30, 2020, indicates that defendant has completed 18 classes at the institution, and that he has had no incidents in the last 6 months. Doc. 44-1, p. 12. Although this record at one point stated that defendant's drug education was complete, the same record also reported that defendant has not completed the Non-Residential Drug Abuse Program. Doc. 44-1, pp. 12-13. At the time of sentencing, this court recommended to the BOP that the defendant be enrolled in the RDAP program, Doc. 37, p. 3, and there is no evidence that he has completed any type of intensive substance abuse program. The individualized needs plan indicated that defendant was rated as having a minimum recidivism risk. Doc. 44-1, p. 15. Nonetheless, this offense involved a substantial quantity of two highly dangerous and addictive drugs, and the offense conduct posed a substantial risk of harm to the public.

The sentence imposed in this case was at the bottom of the

guideline range.  Defendant has been in custody since February 19, 2017, and has served a little over 50 months, about 42% of his sentence.  Considering the totality of the information in this case, the court concludes that the reduced sentence sought by defendant would not be sufficient to reflect the seriousness of the offenses, promote respect for the law, provide just punishment, afford adequate deterrence and protect the public from more crimes by the defendant.

V. Conclusion

The court finds that defendant has failed to show the existence of an extraordinary and compelling reason for his release.  The court further concludes that the §3553(a) factors warrant denying defendant's motion for a reduced sentence.  Even assuming, arguendo, that defendant's health conditions and the threat of COVID-19 are sufficient to constitute an "extraordinary and compelling reason" for a sentence reduction, that reason is outweighed by the statutory factors which militate against defendant's early release.  Defendant's motions for compassionate release (Doc. 44 and 49) are denied.

Date: April 28, 2021         s/James L. Graham
                             James L. Graham
                             United States District Judge